# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SALAS,<br><br>    Plaintiff,<br><br> v.<br><br>FACULTATIEVE TECHNOLOGIES THE AMERICAS, INC.; INCINERATOR SPECIALISTS, INC.; and DOES 1 through 100, inclusive,<br><br>    Defendants. | 1:17-cv-00335-LJO-BAM<br><br>**MEMORANDUM DECISION AND ORDER RE MOTION OF FACULTATIEVE TECHNOLOGIES LIMITED, FACULTATIEVE TECHNOLOGIES UK LIMITED AND FACULTATIEVE TECHNOLOGIES SUPPLIES LIMITED TO DISMISS FOR LACK OF PERSONAL JURISDICTION (ECF No. 15)** |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

1

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

In this personal injury lawsuit, Plaintiff, Jonathan Salas, alleges that he was injured while operating a mechanical loading table used in conjunction with a cremator on or about December 12, 2014, at the Salas Brothers Funeral Chapel ("Salas Brothers") in Modesto, California. ECF No. 7, First Amended Complaint ("FAC") at 5. Plaintiff's initial Complaint, filed in Stanislaus County Superior Court, named Facultatieve Technologies The Americas, Inc. ("FT-The Americas"), and Incinerator Specialists, Inc., as defendants. Following removal of this case on March 7, 2017, the parties stipulated to permit Plaintiff to file an amended complaint. ECF No. 4. The FAC named as additional defendants three foreign companies: Facultatieve Technologies Supplies Limited ("FT-Supplies"), Facultatieve Technologies Limited ("FT"), and Facultatieve Technologies UK Limited ("FT-UK") (collectively, "UK FT Defendants"). ECF No. 7.

On August 31, 2017, responding to the First Amended Complaint, UK FT Defendants filed the instant motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 15 ("Motion"). On September 18, Plaintiff filed his opposition to the motion. ECF No. 16 ("Opp."). On September 25, UK FT Defendants filed a reply in support of their motion. ECF No. 20 ("Reply"). This matter is now ripe for review and is suitable for disposition without oral argument. *See* Local Rule 230(g).

## III. BACKGROUND

In support of its motion to dismiss, UK FT Defendants submit two declarations from Jean E.

2

Stratton, Secretary of Facultatieve Technologies, Ltd, a company organized under the laws of the United Kingdom, with its principal registered office in Leeds, UK. ECF No. 15-3 ¶ 2. Stratton testifies that at all times relevant to the allegations in this suit, FT-The Americas and Incinerator Specialists, Inc., each had control of their own day-to-day business and operated independently of FT, had their own management team, determined their own pricing and marketing, held their own bank accounts, implemented their own policies, and managed and paid their own employees. *Id*. ¶ 3. FT has no offices, manufacturing plants, or other facilities in California. *Id*. ¶ 4. FT did not manufacture, sell, warrant, service, or repair the equipment that Plaintiff alleges caused his injury. *Id*. ¶ 5.

Stratton further testifies that FT-UK and FT-Supplies are both "inactive and ceased trading in 2004" and that since that time, neither "has performed any kind of business activity, received any form of earnings or had any employees." ECF No. 15-2 ¶ 3.

In response, Plaintiff submits his own declaration, ECF No. 17, along with declarations from his attorneys, ECF Nos. 18-19. In his declaration, Plaintiff testifies that his employer, Salas Brothers, purchased the "Cremator and associated Insertion System" at issue in this case in approximately July 2008. ECF No. 17, Salas Decl., ¶¶ 3-4. At the time of purchase, Salas Brothers and its employees "were provided the Operation and Maintenance Instructions" for the Cremator and Cremulator. *Id*. ¶ 4. Those manuals note on every page that they are copyrighted by Facultatieve Technologies Limited and "repeatedly instruct the reader to contact Facultatieve UK regarding maintenance or technical issues." Opp. at 3.

In addition, Plaintiff testifies that in October 2007, FT-The Americas informed Salas Brothers that another funeral chapel in Visalia, California, had purchased the same model of the product that Salas Brothers purchased approximately nine months later. *Id*. ¶ 3. He also avers that at an unspecified time, FT-The Americas told him that his "maintenance request, question and/or concern regarding the

nylon wheels for the carriage of the subject product . . . needed to be referred to Facultatieve UK."[1] *Id.* ¶ 6. Finally, the declaration states his belief that the product at issue contains a computer system that has the capacity to or actually does communicate or transmit information to Facultatieve UK. *Id.* ¶ 5.

One of the declarations from Plaintiff's attorneys attach as exhibits documents received in discovery in this case from FT-The Americas and Incinerator Specialists, Inc. ECF No. 18, Ebsworth Decl. ¶ 3. Invoices for the sale of the component parts of the product at issue from FT to FT-The Americas show that all but one of the parts had a "UK" prefix, and one of the invoices states that it is for "the Salas Project." ECF No. 18, Ebsworth Decl., Ex. 1. The commissioning manual, service manual, service logs, and record sheets for the product all state that they are "the intellectual property of Facultatieve Technologies Limited." *Id.*, Exs. 2-4. The service logs and record sheets include the service performed, date of service, and name of the person who performed it. *Id.*, Ex. 4.

Another declaration from Plaintiff's attorneys attaches as an exhibit emails from counsel for FT-The Americas, in which he represented that FT designs Facultatieve products and that FT-The Americas assembles them. ECF No. 19, Mastagni Decl., Ex. 1 at 1. That declaration further attests that an attorney in Ohio who has "previously represented former employees of Facultatieve Technologies The Americas, Inc." represented during the course of a conversation that "persons from Facultatieve UK would regularly work at Facultatieve Technologies The Americas, Inc." Mastagni Decl. ¶ 4.

## IV. <u>LEGAL STANDARD</u>

On a motion to dismiss for lack of personal jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). When the

---

[1] The parties are inconsistent in the names they use to refer to the defendants. While the UK FT Defendants use a separate designation for each defendant, Plaintiff refers to the three of them collectively as "Factultatieve UK." Opp. at 1. Defendants use "FT-UK" to refer solely to Facultatieve Technologies UK Limited. Motion at 2; Reply at 2. Though the Reply appears to assume that Plaintiff's use of "Facultatieve UK" in his briefing and supporting affidavits referred only to Facultatieve Technologies UK Limited, the Court will read the objections and arguments raised in the Reply to apply to all three UK FT Defendants.

4

court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008 (quotation marks and citation omitted). In resolving the motion on written materials, the court must "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (alteration in original) (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A plaintiff cannot solely rest on the bare allegations of its complaint, but uncontroverted allegations in the complaint must be taken as true. *Boschetto*, 539 F.3d at 1015. "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). In addition, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). However, "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

## V. DISCUSSION

**A.     Personal Jurisdiction**

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. *See* Fed. R. Civ. P. 4(k)(1)(A). Under California's long-arm statute, courts may exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code Ann. § 410.10 (2004). Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, the question here is whether assertion of personal jurisdiction over the UK FT Defendants comports with the limits imposed by federal due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). It is

well established that the Fourteenth Amendment's Due Process Clause limits the power of a court to exercise jurisdiction over out-of-state defendants who do not consent to jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011). There are two kinds of personal jurisdiction that a court may exercise over a foreign defendant. *Id*. at 919. The first, known as "general jurisdiction," exists if the defendant's contacts with the forum are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). The second, known as "specific jurisdiction," exists where the litigation is derived from obligations that "arise out of or are connected with the [company's] activities within the state." *Id*. at 319. Plaintiff has argued only that the Court has specific jurisdiction over the defendants.

1. **Specific Jurisdiction**

The touchstone for asserting specific jurisdiction over a nonresident defendant is "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citation omitted). "The proper question is whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 1125. The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction: (i) the defendant must "purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (ii) the cause of action must "arise[] out of or relate[] to the defendant's forum-related activities"; and (iii) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. Once the plaintiff carries this burden, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id*.

a. **Purposeful Direction**

The test's first prong encompasses both purposeful direction and purposeful availment. *Yahoo!*

*Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). This prong may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Id*. In tort cases, the purposeful direction test ordinarily applies and requires satisfaction of all three prongs of the Supreme Court's effects test from *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *Schwarzenegger*, 374 F.3d at 805.[2] That test requires showing that the defendant (1) has committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id*.

### (1) **Intentional Act**

Under the first element of this test, Plaintiff must demonstrate that the defendants committed an "intentional act." The Ninth Circuit "construe[s] 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806.

The parties contest this element. The unrebutted evidence shows that FT-UK and FT-Supplies ceased operations in 2004. Jean Stratton testifies in an affidavit that neither company has "performed any kind of business activity, received any form of earnings or had any employees since the year 2004." ECF No. 15-2 ¶ 3. Though Plaintiff refers to all three UK FT Defendants collectively throughout his briefing and supporting affidavits, none of the documentary evidence he has put forward mentions FT-UK or FT-Supplies. The operations manuals, service logs, record sheets, and invoices all make reference to FT alone. The hearsay email from counsel for FT-The Americas itself states that "the company that designs the products is Facultatieve Technologies Limited" (FT) without mention of FT-

---

[2] In some cases, the Ninth Circuit has limited the "purposeful direction" test to claims involving intentional torts. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 460 (9th Cir. 2007) ("[I]t is well established that the *Calder* [purposeful direction] test applies only to intentional torts, not to the breach of contract and negligence claims[.]"); *but cf. Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007) (applying *Calder* purposeful direction test to claims of negligence, wrongful interference with contractual relations, civil extortion, and fraudulent recording of document because they are all claims that sound in tort).

7

UK or FT-Supplies.[3] Plaintiff has put forward nothing to challenge the Stratton affidavit, and the Court finds that Plaintiff has not carried his burden to make a prima facie case as to FT-UK or FT-Supplies.

The parties also contest FT's participation. A second Stratton affidavit states that FT-The Americas operates independently of FT and that FT did not manufacture, design, sell, warrant, service, or repair the product at issue. In response, Plaintiff submits manuals for the product at issue showing that they are copyrighted by FT and that the user can procure additional copies of instructions from FT; service logs and record sheets that state that they are the property of FT; and invoices showing that FT sent items bearing a "UK" prefix to FT-The Americas for sale to Salas Brothers, including an invoice from FT to FT-The Americas identifying the items as being for "the Salas Project." This is sufficient to satisfy the intentional act prong because it demonstrates intent by FT to sell the items in question to Salas Brothers.

**(2)** **Express Aiming**

A court's exercise of jurisdiction over a non-resident defendant requires that the defendant "have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This due process analysis focuses on whether a nonresident defendant's conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v, Woodson*, 444 U.S. 286, 297 (1980). It is based on the presumption that it is reasonable to require a defendant to be subject to the burden of litigating in a state in which it conducts business and benefits from its activities in that state. *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989). This requirement is met if the contacts proximately result from actions by the defendant itself that create a substantial connection with the forum, such as where the defendant has

---

[3] A printout from the FT website does identify a "FT United Kingdom." Ebsworth Decl., ECF No. 18, Ex. 5, at PDF p. 72. This appears to refer to FT's operations in various countries (FT The Netherlands, FT Czech Republic, FT France, etc.) rather than identify the name of the corporate entity involved with the operations there.

8

deliberately engaged in significant activities within the forum or has created continuing obligations between itself and forum residents. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76 (1985). But the defendant may not be haled into a jurisdiction as a result of the defendant's random, fortuitous, or attenuated contacts with the forum, or on the unilateral activity of another party or a third person. *Id*. at 475.

Plaintiff argues that the Court has specific jurisdiction of the UK FT Defendants under a "stream of commerce" theory: UK FT Defendants "were fully aware and intended that the product that they designed, manufactured, warranted, sent replacement parts, provided instruction for, invited ongoing questions about and otherwise continued to be involved with, could, would, and did end up in California." Opp. at 8. As Plaintiff notes, a majority of the Supreme Court has not agreed on a stream of commerce test for specific jurisdiction. *See Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102 (1987) and *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011).

*Asahi* involved a motorcycle accident in California resulting from an allegedly defective motorcycle tire. Asahi Metal Industry Co., a Japanese company, manufactured a component of the tires and then sold them in Taiwan to a Taiwanese tire tube company that was later sued in California as a result of the accident. The Taiwanese company filed a cross-complaint against Asahi, seeking indemnification. The California Supreme Court had held that Asahi's awareness that its products would enter the stream of commerce and be sold in California was enough for California to exercise personal jurisdiction over Asahi. The Supreme Court reversed, unanimously concluding that California did not have personal jurisdiction but with none of the three opinions commanding a majority.

Justice O'Connor, writing for herself and three other justices, applied what has become known as the "stream of commerce plus" standard:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum

> State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Asahi*, 480 U.S. at 112. Justice Brennan, also writing for himself and three other justices, disagreed that a plaintiff need show a defendant's "additional conduct" directed toward the forum before a court could exercise jurisdiction over a defendant. *Id.* at 116-17. "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale," such that a defendant who has participated "in this process is aware that the final product is being marketed in the forum State, [and] the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117. Finally, Justice Stevens, joined by two others, concurred in the result but disagreed that the Court need articulate any test under the circumstances beyond the factors set forth in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Even assuming that the test was appropriate, he emphasized Asahi's "regular course of dealing" and that the constitutional determination would be "affected by the volume, the value, and the hazardous character of the components." *Id.*

The Ninth Circuit adopted Justice O'Connor's "stream of commerce plus" formulation of specific jurisdiction, holding that "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state. . . . Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi*, 480 U.S. at 112).

The Supreme Court's most recent pronouncement on personal jurisdiction in a product liability action involving a foreign defendant did not alter this legal landscape. In *J. McIntyre*, a plaintiff injured by an allegedly defective metal-shearing machine filed suit in New Jersey state court against the English manufacturer of the product at issue. The New Jersey Supreme Court held that the English defendant

10

was amenable to suit in New Jersey, "rel[ying] most heavily on three primary facts": (1) the American distributor on one occasion sold a single machine to a New Jersey customer; (2) the British manufacturer permitted its American distributor to sell its machines "to anyone in America willing to buy them"; and (3) the British manufacturers' representatives had attended trade shows in various cities in the United States, though never in New Jersey. 564 U.S. at 888. The Supreme Court, in a 6-3 opinion, held that these facts were not sufficient for New Jersey courts to exercise jurisdiction over the British manufacturer.

Like *Asahi*, the case did not produce a majority opinion. Justice Kennedy, joined by three justices, adopted a more restrictive view of personal jurisdiction, rejecting Justice Brennan's stream-of-commerce theory and reasoning that "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." 564 U.S. at 884. Justice Breyer, joined by one other justice, agreed that New Jersey courts could not properly exercise over the defendant but wrote a more narrow opinion that "adhere[s] strictly to our precedents." *Id*. at 893. Each of the three opinions in *Asahi* "strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant." *Id*. at 888. Only a single sale fails to meet the "regular . . . flow" or "regular course" of sales articulated in the opinions of Justices Brennan and Stevens, respectively, in *Asahi*. *Id*. at 889. A single sale also falls short of demonstrating "'something more,' such as such as special state-related design, advertising, advice, or marketing" under Justice O'Connor's test that would permit the assertion of jurisdiction. *Id*. at 889 (citing *Asahi*, 480 U.S. at 111, 112 (opinion of O'Connor, J.). Under any of the formulations outlined in *Asahi*, the plaintiff had failed to demonstrate that an exercise of jurisdiction would comport with due process.

Because no opinion commanded a majority, Justice Breyer's opinion, the narrowest ground adopted by a majority of the justices, controls. See *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented [Supreme] Court decides a case and no single rationale explaining the results enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those

11

Members who concurred in the judgments on the narrowest grounds[.]"). Justice Breyer's opinion in *J. McIntyre* is consistent with the Ninth Circuit's approach outlined in *Holland*, and the Court focuses its analysis on the FT's efforts directed at California that amount to something more than merely placing the product at issue into the stream of commerce.

Plaintiff argues that the evidence he has submitted, taken together, demonstrates that the UK FT Defendants engaged in something more than passively introducing the subject product into the stream of commerce. FT contends that it operates independently of -FT The Americas and that it did not manufacture, design, sell, warrant, service, or repair the product at issue in this case, and that Plaintiff's evidence is lacking in foundation.

Plaintiff's evidence presented to demonstrate "something more" more falls into two categories. First, he has produced invoices showing that the product and component parts were sent from FT to FT-The Americas (including, in one instance, listing that they were for "the Salas Project") and instruction manuals for operations and maintenance of the product that were created by FT. The manuals list that they are the intellectual property of FT and were created by a systems engineering manager at FT. They state that FT will provide on-site training, answer questions relating to operations and safety, and provide additional copies of instruction manuals. Opp. at 3. Second, Plaintiff has produced hearsay evidence indicating that FT had at least one other sale in California, that information from the machine may have been relayed to FT, and that in at least once instance FT-The Americas referred Plaintiff's maintenance question to FT.

Plaintiff's argument is that FT sent the product to FT-The Americas with the purpose that it be sent along to Salas Brothers and that because the manuals announce that FT would continue to respond to questions, provide on-site training, and send replacement parts or manuals, FT targeted California and satisfied the "something more" required in a stream-of-commerce analysis. Plaintiff has not, however, provided a foundation for where the manuals came from, asserting only that they "were provided" at the time of sale, ECF No. 17, Salas Decl., ¶ 4, conceding that he "has no information regarding where said

12

document came from," Opp. at 7.

Without a direct connection between the manuals and FT, their statements cannot be read as an intentional effort to target California. If FT was unaware that the manual was traveling to California, it cannot be evidence that FT "had an intent or purpose to serve the market in" California by "establishing channels for providing regular advice to customers in" California or otherwise targeting the state. *Asahi*, 480 U.S. at 112 (O'Connor, J.).

Because Plaintiff has not met his burden of demonstrating that FT purposefully directed its activities at California, the Court need not undertake the rest of the personal jurisdiction analysis.

**B.     Jurisdictional Discovery**

Plaintiff requests that in the event that the Court finds that he has not made a prima facie showing of jurisdiction, he be permitted to conduct limited jurisdictional discovery. Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). The Court finds that limited jurisdictional discovery could yield additional facts about the relationship between FT and the product at issue in this case, and the relationship between FT and FT-The Americas. FT disclaims any involvement with the manufacture, design, sale, and warranty of the product, while Plaintiff has produced manuals, invoices, service logs, and record sheets for the product at issue that all bear indications of FT involvement. Because the jurisdictional facts are controverted and "a more satisfactory showing of the facts is necessary," *id*., the Court will allow discovery on this issue.

Accordingly, the Court grants Plaintiff's request for limited jurisdictional discovery.

## VI. CONCLUSION AND ORDER

For the foregoing reasons, UK FT Defendants' motion to dismiss is GRANTED as to Facultatieve Technologies Supplies Limited and Facultatieve Technologies UK Limited and DENIED WITHOUT PREJUDICE as to Facultatieve Technologies Limited.

13

The parties are directed to meet and confer regarding the appropriate scope and length of the jurisdictional discovery period, taking into account any discovery completed during the pendency of this motion. The parties are directed to submit a stipulation and proposed order detailing the scope and length of the jurisdictional discovery period no later than 14 days from the date of this order. If the parties cannot reach a stipulated agreement, the parties shall submit the dispute through a joint discovery letter brief to the Magistrate Judge. The deadline to file a joint letter brief on the scope and length of jurisdictional discovery shall be no later than 21 days from the date of this order.

IT IS SO ORDERED.

Dated: **October 25, 2017**      /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE