UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SALAS,<br><br>    Plaintiff,<br><br>v.<br><br>FACULTATIEVE TECHNOLOGIES THE AMERICA'S INC.; INCINERATOR SPECIALISTS, INC., and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No. 1:17-cv-00335-LJO-BAM<br><br>ORDER DENYING PLAINTIFF'S MOTION TO COMPEL SUPPLEMENTAL RESPONSES TO JURISIDICITIONAL DISCOVERY<br><br>(Doc. 39). |

### I. INTRODUCTION

Plaintiff Jonathan Salas ("Plaintiff") moves to compel supplemental responses to jurisdictional discovery from Defendants Facultatieve Technologies The Americas, Inc. ("FT-The Americas"), and Facultatieve Technologies Limited ("FT-UK"). Defendants separately opposed the motion on April 18, 2018. (Docs. 40, 41). The matter came before the Court for oral argument on April 24, 2018. (Doc. 42). Attorneys Grant Winter and Phillip Ebsworth appeared by telephone on behalf of Plaintiff. Attorneys Nathaniel Lucey and Ming Ouyang appeared by telephone on behalf of Defendant Facultatieve Technologies The Americas, Inc. Attorney Timothy Ryan appeared by telephone on behalf of Defendant Facultatieve Technologies Limited.

Having considered the parties' briefs and arguments, along with the record in this matter,

1

Plaintiff's motion to compel further responses to jurisdictional discovery is DENIED.

## II. BACKGROUND

In this personal injury lawsuit, Plaintiff, Jonathan Salas, alleges that he was injured while operating a mechanical loading table used in conjunction with a cremator on or about December 12, 2014, at the Salas Brothers Funeral Chapel ("Salas Brothers") in Modesto, California. (Doc. 7). Plaintiff's initial Complaint, filed in Stanislaus County Superior Court, named Facultatieve Technologies The Americas, Inc. ("FT-The Americas"), and Incinerator Specialists, Inc. as defendants. Following removal, Plaintiff amended his complaint to add Facultatieve Technologies Supplies Limited, Facultatieve Technologies Limited ("FT-UK"), and Facultatieve Technologies UK Limited (collectively "UK Defendants") as defendants. (Doc. 7). On August 31, 2017, responding to the First Amended Complaint, the three UK Defendants filed a motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. 15).

In a supporting declaration, the Secretary of FT-UK, a company organized under the laws of the United Kingdom, testified that at all times relevant to the allegations in this suit, FT-The Americas and Incinerator Specialists, Inc., each had control of their own day-to-day business and operated independently of FT-UK. FT-UK had their own management team, determined their own pricing and marketing, held their own bank accounts, implemented their own policies, and managed and paid their own employees. (Doc. 22 at 3). FT-UK has no offices, manufacturing plants, or other facilities in California and it did not manufacture, sell, warrant, service, or repair the equipment that Plaintiff alleges caused his injury. (Doc. 22 at 3). The UK Defendants also argued that Facultatieve Technologies UK Limited and Facultatieve Technologies Supplies are both "inactive and ceased trading in 2004." (Doc. 22 at 3).

Plaintiff opposed the motion arguing that FT-UK intentionally shipped the product to FT-The Americas with the purpose that it be sent Plaintiff and that because the manuals announce that FT-UK would respond to questions, provide on-site training, and send replacement parts, FT-UK targeted California. (Doc. 16). In support, Plaintiff produced manuals, invoices, service logs, and record sheets for the product at issue all bearing indications of FT-UK involvement.

2

On October 26, 2017, the District Court granted the UK Defendant's motion to dismiss as to "inactive" Defendants Facultatieve Technologies Supplies and Facultatieve Technologies UK Limited, but denied the motion without prejudice as to FT-UK. (Doc. 22 at 13-14). In doing so, Chief Judge Lawrence J. O'Neill found that while Plaintiff produced evidence of manuals authored by FT-UK, Plaintiff could not "provide a foundation for where the manuals came from." (Doc. 22 at 12). Accordingly, "[w]ithout a direct connection between the manuals and [FT-UK], their statements cannot be read as an intentional effort to target California." (Doc. 22 at 13). Given the controverted facts about the origin of the manuals and other materials, Chief Judge O'Neill ruled as follows:

> The Court finds that limited jurisdictional discovery could yield additional facts about the relationship between [FT-UK] and the product at issue in this case, and the relationship between [FT-UK] and FT-The Americas. [FT-UK] disclaims any involvement with the manufacture, design, sale, and warranty of the product, while Plaintiff has produced manuals, invoices, service logs, and record sheets for the product at issue that all bear indications of [FT-UK] involvement. Because the jurisdictional facts are controverted and "a more satisfactory showing of the facts is necessary," the Court will allow discovery on this issue. Accordingly, the Court grants Plaintiff's request for limited jurisdictional discovery.

(Doc. 22 at 13).

After granting limited jurisdictional discovery, Chief Judge O'Neill ordered the parties to meet and confer on the length and scope of jurisdictional discovery. In the event that the parties could not agree as to the boundaries of jurisdictional discovery, Chief Judge O'Neill instructed the parties to "submit the dispute through a joint discovery letter brief to the Magistrate Judge." (Doc. 22 at 14).

After several meet and confer efforts and informal discovery conferences with the undersigned, on March 28, 2018, the parties agreed that the matter could not be resolved through the Court's informal process. (Doc. 38). The instant formal motion to compel followed.

### III. LEGAL STANDARD

#### A. Motion to Compel

A party may bring a motion to compel discovery when another party has failed to respond adequately to a discovery request. Fed. R. Civ. P. 37(a)(3). A party "may obtain discovery

3

regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). As the moving party, plaintiff must inform the court which discovery requests are the subject of his motion to compel, why defendants' objections are not justified or why the response provided is deficient, and how proportionality and the other requirements of Federal Rule of Civil Procedure 26(b) are met.

### B. Jurisdictional Discovery

"A district court is vested with broad discretion to permit or deny [jurisdictional] discovery." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). Such discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (*quoting Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)); *see also Am. W. Airlines, Inc. v. GPA Group, Ltd*., 877 F.2d 793, 801 (9th Cir. 1989) (noting it is not an abuse of discretion to deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction") (*quoting Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 431 n. 24 (9th Cir. 1977)) (emphasis added). A court may grant jurisdictional discovery if the request is based on more than a "hunch that it might yield jurisdictionally relevant facts," *see Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008), or more than "bare allegations in the face of specific denials." *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted).

Jurisdictional discovery, however, need not be allowed, if the request amounts merely to a "fishing expedition." *Johnson v. Mitchell*, No. CIV S–10–1968 GEB GGH PS, 2012 WL 1657643, *7 (E.D. Cal. May 10, 2012) (citation omitted); *see also Mackovich v. U.S. Gov't*, No. 06-cv-00422-SMS (PC), 2008 WL 2053978, at *1 (E.D. Cal. May 13, 2008) (denying discovery where plaintiff made "no showing that if further discovery were allowed, the outcome of the

motion to dismiss would be affected") (*citing Laub*, 342 F.3d 1080 at 1093). A district court may deny even limited jurisdictional discovery "'[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).

## IV. DISCUSSION

The central issue before this Court is the parties' differing interpretations of the scope of the Court's October 26, 2017 Order granting jurisdictional discovery. In responding to many of Plaintiff's RFPs, Interrogatories, and RFAs, Defendants either refused production or "unilaterally limited" the scope of the discovery requests to California or the Salas Brother project. Defendants contend that this was necessary because Plaintiff's discovery is largely overbroad and seeks production of discovery that falls outside of Judge O'Neill's Order permitting limited jurisdictional discovery. (Doc. 39 at 7). Plaintiff, however, responds that Defendants' discovery responses are insufficient because Chief Judge O'Neill's Order permits broad jurisdictional discovery regarding: (1) the relationship of FT-UK and the product, and (2) FT-UK's relationship with FT-The Americas.

### A. Requests for Production of Documents Propounded on FT-UK [1]

Plaintiff served Defendant FT-UK with thirteen requests for production pursuant to the Court's order granting jurisdictional discovery. (Doc. 39 at 9). Upon receipt of FT-UK's initial responses, Plaintiff determined that the responses to ten of the RFPs were insufficient. Accordingly, Plaintiff seeks to compel further documents from FT-UK as follows:

#### i. **Request for Production Nos. 1 and 2**

RFP No. 1 seeks production of "ANY DOCUMENT sent to YOU from Facultatieve Technologies The Americas, Inc." (Doc. 39 at 10). RFP No. 2 seeks production of "ANY

---

[1] Federal Rule of Civil Procedure 34 governs requests for production of documents. *See* Fed. R. Civ. P. 34. "The party to whom the [Request for Production] is directed must respond in writing within 30 days after being served." Fed. R. Civ. P. 34(b)(2)(A). The requesting party "is entitled to individualized, complete responses to each of the [Requests for Production] . . . , accompanied by production of each of the documents responsive to the request, regardless of whether the documents have already been produced." *Louen v. Twedt*, 236 F.R.D. 502, 505 (E.D. Cal. 2006).

DOCUMENT sent from YOU to Facultatieve Technologies The Americas, Inc." (Doc. 39 at 11). In response to RFP Nos. 1 and 2, FT-UK objected to the production of any documents as "beyond the scope of discovery authorized by the Court's order…regarding the relationship between FT and the product at issue on this case, and the relationship between FT-UK and FT-the Americas." (Doc. 39 at 11). Plaintiff responds that "these simple requests are within the scope of discovery ordered by Judge O'Neill." (Doc. 39 at 6).

As drafted, Plaintiff's RFPs Nos. 1-2 to produce "ANY" and all documents ever sent between FT-UK and FT-The Americas is facially overbroad, lacking in reasonable particularity and can be denied on that basis alone. *See Lopez v. Chertoff*, 2009 WL 1575214, at *2 (E.D. Cal. June 2, 2009) (finding that plaintiff's request for defendant to produce all documents "referring to [or] relating to [Plaintiff]" lacked reasonable particularity because defendant did not have reasonable notice of what is called for and what is not and the request called for a wide range of potentially related documents; noting that one of the purposes of Rule 34 is to prevent fishing expeditions).

A request for production of documents under Rule 34 "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. Pro. 34(b)(1)(A). "Courts tend to find document requests seeking all documents related to a claim or defense as lacking particularity." *See Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 650 (10th Cir. 2008) (request for "'all documents ... that refer to, mention or relate in any way to Plaintiff, [ ] or the litigation or the allegations, facts and circumstances concerning the litigation,' [was] overly broad.")). Plaintiff's all-encompassing requests do not meet this particularity standard.

Additionally, the Court finds this discovery request places far too heavy a burden on FT-UK, a foreign Defendant. Courts have held that "foreign nationals usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018 (7th Cir. 2009).

Accordingly, FT-UK's objection to production is SUSTAINED and Plaintiff's motion to compel further responses to Request for Production Nos. 1 and 2 is DENIED.

    ii.    **<u>Request for Production Nos. 3 and 13</u>**

RFP No. 3 seeks "ANY DOCUMENTS that pertain to the relationship between [FT- UK] and FT- the Americas." RFP No. 13 seeks "ANY DOCUMENTS pertaining to the control of [FT- UK], including but not limited to (a) Board of Directors, (b) Corporate governance, (c) Corporate officers, (d) Governance meetings, (e) Parent corporations, (f) Subsidiary corporations, and (g) Articles of Association."

In response to RFPs No. 3 and 13, FT-UK produced an "Organisation Chart for FT Holding reflecting that [FT-UK] and FT-the Americas are two of multiple subsidiaries of FT Holding." (Doc. 39 at 11). Defendant FT-UK refused to produce any additional documents beyond the "Organisation Chart" on the grounds that Plaintiff should not be allowed to conduct "alter-ego" type discovery in order to establish an alter-ego or agency theory of jurisdiction. Plaintiff responds that while he "does not primarily seek to employ an alter ego theory," further responses should be compelled because alter ego type discovery might produce evidence that would demonstrate that FT-The Americas is so dominated by FT-UK that an agency relationship exists. *See American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591(9th Cir. 1996) ("A parent corporation's relationship with its subsidiary may confer personal jurisdiction over the parent if the subsidiary is acting as the parent company's alter ego, "so as to justify disregard of the corporate entity"). Plaintiff argues that in order for him to establish that FT-The Americas was acting as the agent of FT-UK; Defendants must produce more documents related to their corporate structure.

Plaintiff has misinterpreted the scope of Judge O'Neill's order permitting jurisdictional discovery. In Plaintiff's view, Judge O'Neill's order permitting discovery on "FT-UK's relationship with FT-The Americas," allows discovery into his alternative theory of alter ego jurisdiction. Plaintiff, however, never raised and the Court did not consider the issue of alter-ego/agency jurisdiction. Instead, Plaintiff argued that this Court has specific jurisdiction over the UK Defendants under a "stream of commerce" theory. (Doc. 22 at 9). In testing that theory, the Court ruled that Plaintiff failed to meet "his burden of demonstrating that FT-UK purposefully directed its activities at California" because Plaintiff failed to establish "a direct connection between the manuals and [FT-UK.]" (Doc. 22 at 13). In viewing the March 27 Order, this Court

finds that any inquiry into the relationship between FT-The Americas and FT-UK is limited to the product e.g. how manuals purportedly authored by FT-UK came to be in California. Judge O'Neill's order does not authorize a fishing expedition into structure and culture of the foreign entities. Absent a contrary indication from Judge O'Neill's Order, this Court must conclude that discovery into other theories of jurisdiction is precluded.

For these reasons, Plaintiff's motion to compel further responses to Request for Production Nos. 3 and 13 is DENIED.

### iii. **Request for Production Nos. 7, 8, and 9**

RFP No. 7 seeks "ANY DOCUMENTS regarding the design of the CREMATOR." RFP No. 8 seeks "ANY DOCUMENTS regarding the manufacture of the CREMATOR." RFP No. 9 seeks "ANY DOCUMENTS regarding the transportation of the CREMATOR." In response, Defendant FT-UK refused to produce any documents as outside the scope of Judge O'Neill's order.

Plaintiff argues that FT-UK "unilaterally decided" that the product in question is the loader and therefore FT-UK should be compelled to produce further documents regarding the "CREMATOR." (Doc. 39 at 3). At oral argument, FT-UK explained that the "CREMATOR" is a complex product made up of a web of component parts, many of which are not designed or manufactured by FT-UK. Therefore, FT-UK has taken the position that since Plaintiff was injured by the loader and not more broadly by the cremator, it has provided the relevant information. FT-UK also notes that, at one point in Plaintiff's discovery requests, he provides the definition of the product in this case as follows: "[t]he term 'PRODUCT' refers to the 'FDI Loader,' by which bodies are loaded into the Human Crematory at Salas Brothers Funeral Chapel, 419 Scenic Drive, Modesto, California." (Doc. 39 at 11).

While there is admittedly an open question as to the definition of product, Plaintiff's FAC alleges that he was injured while operating "an automatic insertion system and/or loader table." (Doc. 7 at 4). Plaintiff's discovery requests, as seen here, often are looking through "the wrong end of the telescope," a phrase used to describe the discovery at oral argument. Plaintiffs seeks discovery about all aspects of the cremator in order to further pinpoint the cause of Plaintiff's

injury. Plaintiff, however, may not use his jurisdictional discovery requests to engage in a fishing expedition in the hopes that he may turn up some relevant or useful information. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004). Given the limited jurisdictional discovery ordered here, Plaintiff's discovery must be narrowly tailored. Accordingly, it was proper for FT-UK to refuse to answer requests directed broadly at the cremator.

Plaintiff's motion to compel further responses to Request for Production Nos. 7, 8 and 9 is DENIED.

### iv. **Request for Production Nos. 10, 11, and 12**

RFP No. 10 seeks "ANY DOCUMENT pertaining to Facultatieve products owned by Salas Brothers Funeral Chapel." (Doc. 39 at 13-14). RFP No. 11 seeks "ANY DOCUMENT pertaining to the maintenance of Facultatieve products owned by Salas Brothers Funeral Chapel." RFP No. 12 seeks "ANY DOCUMENTS pertaining to Facultatieve products sold to Salas Brothers Funeral Chapel." In response, FT-UK produced documents within its possession pertaining to the loader. (Doc. 39 at). Plaintiff does not explain why FT-UK's responses to RFPs 10, 11, and 12 are insufficient only that Plaintiff feels he is entitled to discovery on more than just the loader.

For the reasons stated above, Plaintiff's efforts to seek discovery on other Facultatieve products is outside of the scope of the Court's Order granting jurisdictional discovery. Given the limited jurisdictional discovery ordered here, Plaintiff's discovery must be narrowly tailored to the loader. Accordingly, Plaintiff's motion to compel further responses to RFPs 10, 11, 12 is DENIED.

### B. **Requests for Production of Documents Propounded on FT- The Americas**

Plaintiff served Defendant FT-The Americas with thirteen requests for production pursuant to the Court's order granting jurisdictional discovery. (Doc. 39 at 9). Upon receipt of FT-The Americas initial responses, Plaintiff determined that the responses to three of the RFPs were insufficient. Accordingly, Plaintiff seeks to compel further documents from FT-The Americas as follows:

### i. **Requests for Production Nos. 1, 2, 3**

RFP No. 1 seeks production of "ANY DOCUMENTS sent to YOU from [FT-UK]." RFP No. 2 seeks production of "ANY DOCUMENTS sent from YOU to [FT-UK]." RFP No. 3 seeks "ANY DOCUMENTS that pertain to the relationship between YOU and [FT-UK]." In response to RFPs Nos. 1-3, FT-The Americas produced responsive documents but limited its production to those pertaining to the "Salas Brothers Project." (Doc. 39 at 20).

As stated above, Plaintiff's document requests seeking any and all documents are facially overbroad. *See Lopez*, 2009 WL 1575214, at *2. The Court is not finding that none of the information in RFPs 1, 2, and 3 is discoverable. A carefully tailored request might pass muster under the Federal Rules governing discovery; however, no such request is before this Court. The requests that are before this court—RFP Nos. 1, 2, and 3—are impermissibly overbroad. As such, FT-The Americas appropriately limited the scope of its response to documents related to the underlying Salas Brothers incident.

Accordingly, Plaintiff's motion to compel further responses to RFPs 1, 2, and 3 is DENIED.

### C. Interrogatories Propounded on FT-The Americas[2]

Plaintiff served Defendant FT-The Americas with thirteen interrogatories pursuant to the Court's order granting jurisdictional discovery. (Doc. 39 at 9). Upon receipt of FT-The Americas initial responses, Plaintiff determined that the responses to four of the interrogatories were insufficient. Plaintiff requests that the court compel FT-The Americas to respond fully and completely to the following interrogatories:

///

#### i. **Interrogatory No. 1**

This request asks FT-The Americas to "IDENTIFY ANY instances where YOU contacted Defendant [FT-UK] regarding Facultatieve Products in California." FT-The Americas responded that it "has never contacted anyone at [FT-UK] for purposes of repairing or troubleshooting

---

[2] Under Federal Rule of Civil Procedure 33, a party may propound interrogatories which require the answering party to "furnish such information as is available to the party" after conducting a reasonable inquiry. See Fed R. Civ. P. 33(a). Each interrogatory must be answered separately and under oath. Fed R. Civ. P. 33(b).

Facultatieve products in California. From 2005 until 2010, Facultatieve would contact [FT-UK] for purposes of obtaining the component parts needed to assemble the loaders and cremators." (Doc. 39 at 26).

### ii. **Interrogatory No. 2**

This request asks FT-The Americas to "IDENTIFY ANY instances where employees and/or agents of Defendant [FT-UK] were physically present in the United States of America." In addition to objecting the request as unduly burdensome and overbroad, Defendant narrowed its response to all instances where a FT-UK employee was in the state of California. FT-The Americas identified that in 2005, an engineer from [FT-UK] "attended the commissioning and instillation of a cremator and loader in Visalia, California. Responding Party believes that individual was Andrew Lee-Cann." (Doc. 39 at 26).

### iii. **Interrogatory No. 7**

This request asks FT-The Americas to "IDENTIFY who provided YOU with the 'Operation and Maintenance Instructions for the FTII/FTIII Cremator (with PC)'"? Defendant responded that [FT-UK] "provided Responding Party with the contents of the manual electronically. Responding party would print the manual and provide it to customers." (Doc. 39 at 28).

### iv. **Interrogatory No. 8**

This request asks FT-The Americas to "IDENTIFY who provided the Salas Brothers Funeral Chapel with the 'Operation and Maintenance Instructions for the FTII/FTIII Cremator (with PC)'"? FT-The Americas responded that it provided "the physical copy of the manual to the Salas Brothers at the time of instillation." (Doc. 28 at 32).

Plaintiff argues generally that FT-The Americas' responses to ROGs 1, 7 and 8 are insufficient because the responses "fail to adequately identify persons and/or instances." (Doc. 39 at 7). With respect to ROG No. 2, Plaintiff argues that FT-the Americas "unilaterally limited the scope of Plaintiff's question to California." However, Plaintiff has not met his burden to identify and explain why Defendants' responses are insufficient to address each response in the context of the interrogatory. Plaintiff only discussed one request with particularity, ROG No. 2, which given

11

the limited jurisdictional discovery here FT-The Americas appropriately limited to the State of California. Therefore, Plaintiff's motion to compel supplemental responses to Interrogatories 1, 2, 7 and 8 is DENIED.

### D. Requests for Admission Propounded on FT-The Americas [3]

Finally, Plaintiff served Defendant FT-The Americas with five Requests for Admission. (Doc. 39 at 31-32). RFA Nos. 1-4 asks FT-The Americas to ADMIT that FT-UK manufactured, designed, sold, and/or warranted the product. RFA No. 5 asks FT-The Americas to ADMIT that FT-UK created the "Operation and Maintenance Instructions for the FTII/FTIII Cremator (with PC). Plaintiff does not object to the merits of Defendant's response, rather Plaintiff requests that FT-the Americas be compelled to provide amended responses omitting "the meritless and boilerplate objections so as to be clear that information is not being withheld on the basis of such objections." (Doc. 39 at 7). Defendant argues that its responses, which included objections as well as complete responses, comply with Federal Rule of Civil Procedure 36.

Plaintiff's motion to compel amended responses to his Requests for Admission is DENIED. Based upon the ambiguities of the defective product definition, the Court does not find the objections without merit. Defendant responded to all of Plaintiff's requests with admissions or denials, subject to certain objections. Plaintiff has failed to demonstrate how the responses are deficient.

### V. CONCLUSION

For the reasons stated, it is HEREBY ORDERED as follows:

---

[3] Rule 36 of the Federal Rules of Civil Procedure provides for requests for admissions as follows: "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to (A) facts, the application of law to fact, or the opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." Id. "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.* The requesting party may move to determine the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6). Unless the court finds an objection justified, it must order that an answer be served. *Id.* On finding that an answer does not comply with this rule, the court may either rule that the matter is admitted or that an amended answer be served. *Id.*

1. Plaintiff's motion to compel supplemental responses to jurisdictional discovery is DENIED.

2. Plaintiff is ORDERED to serve his remaining jurisdictional discovery requests on Defendants within seven (7) days of the date of this order;

3. On or before **June 22, 2018**, the parties shall each file a status report briefly discussing the status of the case and proposing a joint briefing schedule for Defendant Facultatieve Technologies Limited's motion to dismiss.

IT IS SO ORDERED.

Dated: **April 30, 2018**                    /s/ *Barbara A. McAuliffe*
                                              UNITED STATES MAGISTRATE JUDGE