# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SALAS,<br><br>Plaintiff,<br><br>v.<br><br>FACULTATIEVE TECHNOLOGIES THE AMERICAS, INC.; INCINERATOR SPECIALISTS, INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | 1:17-cv-00335-LJO-BAM<br><br>MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS BY FACULTATIEVE TECHNOLOGIES LIMITED (ECF No. 47) |

## I. INTRODUCTION

This personal-injury suit arises out of an injury that Plaintiff Jonathan Salas ("Plaintiff") sustained while operating a mechanical loading table used with a cremator on or about December 12, 2014, at the Salas Brothers Funeral Chapel ("Salas Brothers") in Modesto, California. ECF No. 7, First Amended Complaint ("FAC") at 5. Plaintiff's initial Complaint, filed in Stanislaus County Superior Court, named Facultatieve Technologies The Americas, Inc. ("FT-The Americas"), and Incinerator Specialists, Inc., as defendants. Following removal of this case on March 7, 2017, the parties stipulated to permit Plaintiff to file an amended complaint. ECF No. 4. The FAC named as additional defendants three foreign companies: Facultatieve Technologies Supplies Limited ("FT-Supplies"), Facultatieve Technologies Limited ("FT Ltd."), and Facultatieve Technologies UK Limited ("FT-UK") (collectively, "UK FT Defendants"). ECF No. 7.

On August 31, 2017, responding to the First Amended Complaint, UK FT Defendants moved to

dismiss based on a lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In a memorandum decision and order dated October 26, 2018, the Court granted the motion to dismiss as to FT-Supplies and FT-UK but denied the motion without prejudice as to FT Ltd. The Court ordered jurisdictional discovery as to FT Ltd. The jurisdictional discovery has taken place, and FT Ltd. has now renewed its motion to dismiss for lack of personal jurisdiction. ECF No. 47 ("Mot."). Plaintiff opposed, ECF No. 48 ("Opp."), and FT Ltd. replied, ECF No. 49 ("Reply"). This matter is now ripe for review and is suitable for disposition without oral argument. *See* Local Rule 230(g).

## II. BACKGROUND

Plaintiff identifies nine facts that he argues favor the exercise of jurisdiction over FT Ltd. First, FT Ltd. shipped the loader table, its component parts, and the user manual from the United Kingdom to the United States. Second, FT Ltd. specified the height of the loading table to its French fabricating company. Third, FT Ltd. communicated to the French fabricating company that the product was destined for the United States. Fourth, FT-The Americas obtained component parts for the loading table from FT Ltd. Fifth, in 2005, approximately two years before Salas Brothers purchased the product, an engineer from FT Ltd. attended the commissioning and installation of a cremator and loader in Visalia, California, at a different mortuary. Sixth, FT Ltd. was responsible for converting the specifications on the engineering documents from metric units to imperial units to be used in the United States. Seventh, FT Ltd. authored the operations manual for the cremation system, which controls the loading table product at issue. Eighth, FT Ltd. knew that the operations manual would be sent to the United States. Finally, FT Ltd. admitted that it has had a "computerized link" with the product at issue and the crematorium since the product was commissioned in 2008.

FT Ltd., in response to jurisdictional discovery requests, denied that it manufactured, designed, sold, or warranted the loader table. ECF No. 48-1, Winter Decl., Ex. G at 1-2.

## III. LEGAL STANDARD

On a motion to dismiss for lack of personal jurisdiction brought pursuant to Fed. R. Civ. P.

12(b)(2), the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). When the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (quotation marks and citation omitted). In resolving the motion on written materials, the court must "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (alteration in original) (quotation marks omitted) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). A plaintiff cannot solely rest on the bare allegations of the complaint, but uncontroverted allegations in the complaint must be taken as true. *Boschetto*, 539 F.3d at 1015. In addition, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). However, "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

## IV. DISCUSSION

### A. Personal Jurisdiction

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. *See* Fed. R. Civ. P. 4(k)(1)(A). Under California's long-arm statute, courts may exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10 (2004). Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, the question here is whether assertion of personal jurisdiction over FT Ltd. comports with the limits imposed by federal due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985). It is well

established that the Fourteenth Amendment's Due Process Clause limits the power of a court to exercise jurisdiction over out-of-state defendants who do not consent to jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). There are two kinds of personal jurisdiction that a court may exercise over a foreign defendant. *Id*. at 919. The first, known as "general jurisdiction," exists if the defendant's contacts with the forum are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). The second, known as "specific jurisdiction," exists where the litigation is derived from obligations that "arise out of or are connected with the [company's] activities within the state." *Id*. at 319. Plaintiff has argued only that the Court has specific jurisdiction over the defendants.

1. **Specific Jurisdiction**

The touchstone for asserting specific jurisdiction over a nonresident defendant is "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citation omitted). "The proper question is whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 1125. The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction: (i) the defendant must "purposefully direct his activities or consummate some transaction with the forum or resident thereof"; (ii) the cause of action must "arise[] out of or relate[] to the defendant's forum-related activities"; and (iii) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two prongs of the test. *Id*. Once the plaintiff carries this burden, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id*.

   a. **Purposeful Direction**

The test's first prong encompasses both purposeful direction and purposeful availment. *Yahoo!*

*Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). This prong may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Id*. In tort cases like this one, the purposeful direction test ordinarily applies and requires satisfaction of all three prongs of the Supreme Court's effects test from *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *Schwarzenegger*, 374 F.3d at 805.[1] That test requires showing that the defendant (1) has committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id*.

### (1) <u>Intentional Act</u>

Under the first element of this test, Plaintiff must demonstrate that the defendants committed an "intentional act." The Ninth Circuit "construe[s] 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F.3d at 806. The acts that Plaintiff proffers in his opposition, such as shipping the loader parts, qualify as intentional acts, and the first prong of this test is easily met.

### (2) <u>Express Aiming</u>

A court's exercise of jurisdiction over a non-resident defendant requires that the defendant "have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. This due process analysis focuses on whether a nonresident defendant's conduct and connection with the forum state are such that it should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

---

[1] In some cases, the Ninth Circuit has limited the "purposeful direction" test to claims involving intentional torts. *See Holland Am. Line Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 460 (9th Cir. 2007) ("[I]t is well established that the *Calder* [purposeful direction] test applies only to intentional torts, not to the breach of contract and negligence claims[.]"); *but cf. Menken v. Emm*, 503 F.3d 1050, 1059 (9th Cir. 2007) (applying *Calder* purposeful direction test to claims of negligence, wrongful interference with contractual relations, civil extortion, and fraudulent recording of document because they are all claims that sound in tort).

5

286, 297 (1980). It is based on the presumption that it is reasonable to require a defendant to be subject to the burden of litigating in a state in which it conducts business and benefits from its activities in that state. *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989). This requirement is met if the contacts proximately result from actions by the defendant itself that create a substantial connection with the forum, such as where the defendant has deliberately engaged in significant activities within the forum or has created continuing obligations between itself and forum residents. *Burger King Corp*, 471 U.S. at 474-76. But the defendant may not be haled into a jurisdiction as a result of the defendant's random, fortuitous, or attenuated contacts with the forum, or on the unilateral activity of another party or a third person. *Id*. at 475.

This prong "asks whether the defendant's allegedly tortious action was 'expressly aimed at the forum.'" *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010)). Because "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis," *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011), it is not enough to show that a defendant targeted the United States; it instead requires that a defendant purposefully availed itself of the privilege of conducting activities within that state. *See id*. at 885-86 (holding that where a defendant directed marketing and sales efforts at the United States, but not the forum state where it has been sued, that state's courts lacked authority to exercise jurisdiction over the defendant).

### (a) **Application of Test**

FT Ltd. argues that it was an intermediate shipper that had nothing to do with the design, manufacture, sale, service, or warranty of the loading table that allegedly caused Plaintiff's injury. In particular, it points to its responses to the jurisdictional discovery requests, which show that Manguin FDI, located in Charmes, France, designed the loading table, and that Tolecma, located in Sainte-Menehould, France, manufactured the loading table. Mot. at 3. In addition, the sales contract was between Salas Brothers and FT-The Americas. FT Ltd. did not warrant, service, or repair the loading

table. *Id.* (citing Declaration of Jean E. Stratton, ECF No. 15-3, ¶ 5). The evidence from jurisdictional discovery shows only that the French manufacturer of the table shipped it to FT Ltd., which then sent it to FT-The Americas, without "inspect[ing] or alter[ing] the loading table" or doing anything other than forwarding it to Medina, Ohio, where FT-The Americas modified the table before delivering it and installing it at Salas Brothers. Mot. at 3. FT Ltd. argues that mere knowledge that the table would end up at Salas Brothers is inadequate to establish jurisdiction over FT Ltd.

FT Ltd. also argues that the operation and maintenance manual for the cremator cannot establish jurisdiction over FT Ltd., because the manual applies to the cremator and cremulator, not the loading table at issue. The loading table is a "separate product" that is neither part of nor necessary to the operation of the cremator. The cremator instruction manual "does not provide any instructions regarding operation or maintenance of a loading table." Mot. at 4.

The nine facts that Plaintiff identifies fall short of establishing a prima facie case for jurisdiction over FT Ltd. in California. Most of the evidence at best establishes an awareness that the component parts were destined for the United States. The first, third, and eighth asserted facts, that FT Ltd. shipped the loading table from the French manufacturer to FT-The Americas, that FT Ltd. knew that FT-The Americas intended to sell the table to Salas Brothers in California, and that FT Ltd. knew that the instructions for the cremator and cremulator would be sent to California, are inadequate to demonstrate that FT Ltd. targeted California. Shipping parts to a distributor with the knowledge that they will end up in the forum state, without more, is not enough to satisfy the constitutional requirements for specific jurisdiction. *Nicastro*, 564 U.S. at 873 ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."); *Holland Am. Line Inc.*, 485 F.3d at 459 ("Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state."); *Bombardier*

7

*Recreational Prods., Inc. v. Dow Chem. Canada ULC*, 216 Cal. App. 4th 591, 604 (2013) ("mere knowledge, without something more, is insufficient to establish jurisdiction in a forum state").

FT Ltd. contests Plaintiff's characterization of the second and sixth asserted bases, but even accepting as true that FT Ltd. specified the height of the loading table and converted the design documents for the loading table from metric units to imperial ones, they also are inadequate to demonstrate that FT Ltd. targeted California. At most they show an awareness that FT-The Americas ordered a table of a certain height and that FT-The Americas intended to sell loading tables in the United States. Neither fact demonstrates an effort to target California. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017) ("The primary focus of our personal jurisdiction inquiry is the defendant's relationship to the forum State."); *Nicastro*, 564 U.S. at 885-86 (holding that where a defendant directed marketing and sales efforts at the United States, but not the forum state where it has been sued, that state's courts lacked authority to exercise jurisdiction over the defendant).

As the fourth basis, Plaintiff points to an interrogatory response by FT-The Americas in which that defendant stated that from 2005 to 2010, during the period when Salas Brothers purchased the cremator and loading table, "[FT-The Americas] would contact [FT Ltd.] for purposes of obtaining the component parts needed to assemble the loaders and cremators." Opp. at 10 (quoting ECF No. 47-1 ¶ 3, Ex. B at 4). This is consistent with FT Ltd.'s assertion that it is merely an intermediate shipper of the loader and demonstrates nothing more than that FT Ltd. sent parts to FT-The Americas, with no evidence that there was any effort to target California.

Plaintiff's strongest evidence lies in the remaining three asserted bases. The fifth basis involves activity specifically involving California in the form of (1) a hearsay declaration from Plaintiff that FT-The Americas informed Salas Brothers that a funeral home in Visalia, California, had purchased the same cremator and loader that Salas Brothers later purchased; and (2) an interrogatory response from FT-The Americas stating that "[i]n 2005, an engineer from [FT Ltd.] attended the commissioning and

8

installation of a cremator and loader in Visalia, California." ECF No. 47-1 ¶ 3, Ex. B at 4. The hearsay declaration is not particularly meaningful on its own, as it lacks information concerning FT Ltd.'s conduct and therefore provides no foundation for the conclusion that FT Ltd. was involved with that sale. That an engineer from FT Ltd. was present for the commissioning and installation of a cremator and loader of a different machine gets closer to suggesting that FTD Ltd. made some efforts to target California, but without more, it is difficult to make much of this fact. That FT Ltd. acted as a shipper of loader parts and that one of its engineers was present at a different mortuary in California is not enough to make a prima facie showing that it expressly aimed its actions at California. Absent further information about why the engineer was present, under what circumstances, and whether this was a common practice or was part of a wider effort to target the state, this is a too attenuated a connection to California to make a showing of express aiming. [2]

The seventh and ninth bases that Plaintiff asserts go to the degree of interconnectedness between the cremator and the loader. The seventh basis is that Salas Brothers and its employees "were provided the Operation and Maintenance Instructions" for the cremator, which bears a notice on every page that the instruction manual was copyrighted by FT Ltd. Opp. at 3. Plaintiff points out that the instructions include recommendations for installation, operation, and maintenance; offer to provide on-site operating training, to answer questions relating to operations and safety, and to provide additional copies of instruction manuals; and an offer for FT Ltd. to answer any additional questions not addressed in the manual. *Id*. (quoting ECF No. 48-1, Winter Decl., Ex. H). The warranty in the manual states that a business address in Leeds, England, associated with FT Ltd. would provide replacement parts. *Id*.

---

[2] Even if this were enough to satisfy the requirement that FT Ltd. purposefully directed its activities at California, the Court would find that the presence of an employee at the commissioning of another product is enough to find that this suit arises out of such forum-related activities. Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780. Without the connection between the forum-related activity and the controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id*. at 1781. In other words, "specific jurisdiction is tethered to the relationship between the forum and the claim," not merely between forum and the defendant. *Holland America*, 485 F.3d at 460. That nexus is absent here, where FT Ltd. has disclaimed any role in the design, manufacture, or other connection to the loading table at issue apart from its role as an intermediate shipper.

Plaintiff also argues that the cremator and loader are not in reality "unrelated items" because the cremator is electronically connected to the loader and can send signals to it and that there "is some integration between the control system and the loader."[3] ECF No. 48-1, Winter Decl., Ex. E at 4-5. FT Ltd. responds that the instruction manual is a "generic document" that was issued to FT-The Americas and that has been modified multiple times. Reply at 5. More importantly, FT Ltd. notes that the loader—the product Plaintiff alleges injured him—is a separate product from the cremator and cremulator, and that the cremator and cremulator can and do operate without a loading table.[4] The cremator does not control the loading table; both "are operated via software installed on a personal computer that receives input from a human operator." ECF No. 47-1 ¶ 3, Ex. D at 6. In addition, Plaintiff has not identified any reference to the loader in the cremator instruction manual. This evidence does not demonstrate that FT Ltd. expressly aimed its activities at California.

Finally, as the ninth basis, Plaintiff avers that "FT Ltd. has had a computerized 'link' to the product since it was commissioned in 2008." Opp. at 12. The support for this statement comes from FT Ltd.'s response to a request for admission. In response to a request to admit that "between January 2007 and the present, YOU remotely accessed the computer system connected to the CREMATOR and the PRODUCT," FT Ltd. responded, opaquely, "There is no direct communication to the product[;] however, a link would have been established at the initial commissioning of the product which is normal for all subsidiaries within the group to be able to communicate with other sites." ECF No. 48-1, Winter Decl., Ex. F at 3. FT Ltd. argues in reply that Plaintiff has offered nothing to support the idea that any communication between the cremator's computer system and FT Ltd actually occurred. In its

---

[3] This latter language was provided in response to an interrogatory asking, "Does the computer system which the CREMATOR 'is electronically connected to' collect data regarding the PRODUCT?" ECF No. 48-1, Winter Decl., Ex. E at 45.

[4] In the interrogatories to FT-The Americas, for instance, Plaintiff defined "the product" to be "the 'FDI Loader' by which bodies are loaded into the Human Crematory at Salas Brothers Funeral Chapel, 419 Scenic Drive, Modesto, California." ECF No. 47-1 ¶ 3, Ex. B at 5. The interrogatories define the "cremator" to be "the FTIII cremator, including its computer system(s) and [its] component or ancillary parts," located at Salas Brothers. *Id*. at 4.

10

jurisdictional discovery responses, FT Ltd. stated that the cremator's control system "was manufactured for [FT-The Americas] by a manufacturer local to [FT-The Americas] in Medina, [Ohio]" and that FT Ltd. has never accessed the computer system that the cremator is electronically connected to. ECF No. 48-1, Winter Decl., Ex. E at 5. As a result, this evidence does not demonstrate that FT Ltd. targeted California based on a hypothetical computerized link that was never used.

In sum, most of the evidence Plaintiff has put forward at best establishes an awareness that the component parts that it shipped to FT-The Americas were destined for the United States. This alone is inadequate to confer specific jurisdiction over FT Ltd. *See Nicastro*, 564 U.S. at 882 ("as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State"); *Mitsui Sumitomo Ins. USA, Inc. v. Kyocera Mita Corp.*, No. 2:15-cv-01860-ODW-FFM, 2016 WL 4010022, at *3 (C.D. Cal. July 25, 2016) ("Any KDS product that enters California is first sold in Japan to Kyocera America, who in turn transports it to California. It is Kyocera America—not KDS—that ultimately decides who to sell these products to and where they end up. While there is no argument that Kyocera America has purposefully availed itself of the benefits and protections of California, KDS, on the other hand, does not have any such contact with California." (internal citation omitted)); *NuCal Foods, Inc. v. Quality Egg* LLC, 887 F. Supp. 2d 977, 990 (E.D. Cal. 2012) ("Here, even if plaintiff's allegation that the entity defendants were a 'consolidated farming enterprise that included every aspect of egg production' was true, that is not enough to demonstrate that each separate entity was actually involved in the sale and delivery of the allegedly tainted eggs by Quality Egg to NuCal in California."); *Rockwell Automation, Inc. v. Kontron Modular Computers*, No. 12CV566-WQH WMC, 2012 WL 5197934, at *9 (S.D. Cal. Oct. 19, 2012) (finding "no evidence to support a finding of *specific jurisdiction*" where there was a declaration establishing that the defendant "is not even 'involved in the engineering or development of these products'"). FT Ltd. casts itself as nothing more than the intermediate shipper of the loader table to FT-The Americas, and the evidence that Plaintiff has identified concerning FT Ltd.'s role in shipping goods to its American sister company does not show

11

that FT Ltd. did more than that such that it can be said to have targeted California by purposefully directing its activities at it.

Hearsay evidence that another mortuary in California bought a cremator and loading table—from an unidentified source—and that an employee of FT Ltd. attended the commissioning and installation of a cremator and loader—under unexplained circumstances—is too thin a basis to give rise to a finding of specific jurisdiction without more evidence to establish that FT Ltd. targeted California. Plaintiff has identified no case law in which conduct as attenuated as this was found to establish a regular flow or regular course of sales or to establish "'something more,' such as special state-related design, advertising, advice, marketing, or anything else" that would permit a finding of targeting California. *Nicastro*, 564 U.S. at 889. Instead, these circumstances are akin to the ones in *Nicastro*, where the Supreme Court found that the British manufacturer had at most targeted the United States, rather than the state where suit had been filed, when it sent its product to an American distributor and did not do more to target New Jersey in particular. FT Ltd. may have a copyright on the instruction manual for the cremator and may have shipped parts from the manufacturer to FT-The Americas. But without firmer evidence that *it*, rather than FT-The Americas, targeted California with the sale of the loader at issue in this case, the exercise of jurisdiction is not proper.

Because Plaintiff has not met his burden of demonstrating that FT purposefully directed its activities at California, the Court need not undertake the rest of the personal jurisdiction analysis. *Schwarzenegger*, 374 F.3d at 802 ("If the plaintiff fails to satisfy either of these [specific jurisdiction] prongs, personal jurisdiction is not established in the forum state.").

Accordingly, Plaintiff has failed to demonstrate that this Court has jurisdiction over FT Ltd.

## V. CONCLUSION AND ORDER

For the foregoing reasons, FT Ltd.'s motion to dismiss (ECF No. 47) is **GRANTED**.

IT IS SO ORDERED.

    Dated:   **November 9, 2018**           /s/ Lawrence J. O'Neill

UNITED STATES CHIEF DISTRICT JUDGE